IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TheBrain Technologies, LP,<br><br> Plaintiff,<br><br>v.<br><br>AnyLogic North America, LLC,<br><br> Defendant. | Case No. 19-cv-10743<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

  Plaintiff TheBrain Technologies LP ("TheBrain") brings this action against defendant AnyLogic North America, LLC ("AnyLogic") and hereby alleges as follows:

**THE PARTIES**

  1. TheBrain is a limited partnership organized and existing under the laws of California having a principal place of business in 11522 W. Washington Blvd., Los Angeles, California 90066.

  2. TheBrain provides software solutions that enable users to organize information in graphical diagrams such as mind maps. In particular, TheBrain makes, offers and sells software products and services, including "TheBrain," "TeamBrain," "TeamBrain Server," and "TheBrain Cloud Services," which allow the user to integrate various types of data and transform them into graphical diagrams through the use of an innovative and user-friendly interface.

  3. TheBrain is widely recognized as one of the industry leaders in mind mapping software, with clients ranging from Fortune 100 companies to major research institutions. In addition, media channels such as PCWorld and Entrepreneur have featured and praised TheBrain's products and services. A collection of such features and praise is located at http://old.thebrain.com/about/news/, which is incorporated herein by reference. Additionally,

several exemplary features, articles, and blog entries are attached hereto as Exhibit C, and are incorporated herein by reference.  TheBrain has developed and offered, and continues to develop and offer, high quality products and services for individual and enterprise users alike.

4. AnyLogic is a corporation organized and existing under the laws of Massachusetts having a principal place of business at 20 North Wacker Drive, Suite 2044, Chicago, IL 60606.

## JURISDICTION AND VENUE

5. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*.  This Court accordingly has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2202.

6. This Court has jurisdiction over AnyLogic because AnyLogic is incorporated in the Commonwealth of Massachusetts, does business in the Commonwealth of Massachusetts and this District, contracts to supply goods or services within the Commonwealth of Massachusetts and this District, has continuous and systematic business contacts within the Commonwealth of Massachusetts and this District, derives substantial revenue from interstate commerce from goods used or services rendered in the Commonwealth of Massachusetts and this District, and/or commits and has committed acts of patent infringement either within the Commonwealth of Massachusetts and this District, or outside the Commonwealth of Massachusetts and this District with a reasonable expectation that such acts would have consequences within the Commonwealth of Massachusetts and this District.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), 1400(b), and 1404(a).

## FACTS

### *The '736 Patent*

8.      On December 26, 2000, U.S. Patent No. 6,166,736 (the "'736 Patent"), entitled "Method and apparatus for simultaneously resizing and relocating windows within a graphical display," a copy of which is attached hereto as Exhibit A, was duly and legally issued by the United States Patent and Trademark Office ("USPTO") to Harlan M. Hugh as inventor.

9.      TheBrain's CEO Harlan Hugh is the inventor of the '736 Patent, and its technology is embodied across several of TheBrain's products and services.

10.      The '736 Patent identifies and sets out to solve technological problems that arise out of and that are unique to computer display devices and graphical user interface systems, including technological challenges that at the time significantly limited the available "screen real estate" within a computer's display device and failed to enable users adequately to switch and/or simultaneously view the contents loaded onto such display device. ('736 Patent at 1:39-60.) As such, the claimed invention of the '736 Patent provides a graphical user interface splitting system directly related to the graphical user interface's structure which improves utilization of screen real estate and increases ease of accessing multiple window displays loaded within the same computer display device. ('736 Patent at 2:55-62.)

11.      As described above, the '736 Patent claims are directed to an improved user interface, including specific user interface components, for computing devices, including better methods of displaying data and functions of interest to the user that improve the speed of the user's navigation and prevents the need for the user to page through multiple screens or manually organize the contents of the display. Thus, the claims of the '736 Patent are directed to presenting the user with desirable information in a new way. (*See also, e.g.,* Ex. C.)

12. AnyLogic also touts the benefits of the user interface of its products, which are accused of infringement in this Complaint (*see, e.g.,* Ex. D (various printouts from AnyLogic's website, incorporated herein by reference)), demonstrating that improvements to the user interface represent technical solutions to a technical problem.

13. Prior art methods of navigation within the user interface were not user friendly and required a user to navigate through more complex steps, menus, and display systems to effectively use the screen real estate and display desirable information in a preferred format, undercutting the effectiveness of the computer as a means to review and view the data, menus, and displayed information.

14. TheBrain continuously and consistently marked the '736 Patent on products and services that embodied the claimed technology of the '736 Patent.

15. TheBrain has previously licensed the '736 Patent to other companies, including to companies against whom TheBrain has alleged infringement.

### *TheBrain's Ownership of the '736 Patent*

16. In 1998, the inventor, Harlan Hugh, assigned all right, title, and interest in the '736 Patent to Natrificial LLC ("Natrificial"), as shown in Exhibit E.

17. In 2000, Natrificial merged with TheBrain Technologies Corporation, a Delaware corporation.  Natrificial transferred all assets to TheBrain Technologies Corporation via an asset purchase agreement as a part of the merger.

18. On January 6, 2006, TheBrain was formed as a California limited partnership, as shown in Exhibit F.

19. On January 16, 2006, TheBrain acquired all assets of TheBrain Technologies Corporation pursuant to an asset purchase agreement, including Natrificial.

20. On April 26, 2006, TheBrain Technologies Corporation was dissolved as a corporate entity, as shown in Exhibit G.

21. On August 14, 2007, Natrificial was dissolved as a corporate entity, naming TheBrain as the sole surviving member in its certificate of cancellation, as shown in Exhibit H.

22. As further discussed below, on May 15, 2017, TheBrain filed a previous suit alleging infringement of the '736 Patent against AnyLogic in the Central District of California (Case No. 2:17-cv-03643), which was later transferred to the Northern District of Illinois (Case No. 1:17-cv-06574). On July 30, 2018, after filing an unsuccessful petition for *inter partes* review, AnyLogic filed a motion to dismiss for lack of standing. (Case No. 1:17-cv-06574, D.I. 63.) TheBrain opposed this motion (*id.* at D.I. 71) and AnyLogic filed a reply (*id.* at D.I. 73).

23. On March 4, 2019, the Northern District of Illinois dismissed the complaint in Case No. 1:17-cv-06574 without prejudice. (*Id.* at D.I. 77.) Thus, TheBrain pleads below, pursuant to Fed. R. Civ. P. 8, four bases for TheBrain's ownership of the '736 Patent. To the extent the Court determines that any claims are inconsistent or otherwise incompatible, TheBrain pleads each basis for ownership in the alternative.

*First Alternative Basis for Ownership*

24. TheBrain is the owner of the '736 Patent by assignment, having received all right, title, and interest in the '736 Patent from TheBrain Technologies Corporation.

25. As stated above, in 1998, the sole inventor, Harlan Hugh, assigned all right, title, and interest in the '736 Patent to Natrificial. (Ex. E.)

26. In 2000, Natrificial assigned all right, title, and interest in the '736 Patent to TheBrain Technologies Corporation in a written assignment as a part of an asset purchase

agreement pursuant to the merger between Natrificial and TheBrain Technologies Corporation, as evidenced and confirmed in the Confirmatory Assignment attached hereto as Exhibit I.

27. On January 16, 2006, TheBrain Technologies Corporation assigned the '736 Patent to TheBrain, as shown in Exhibit J, as a part of the asset purchase agreement discussed in Paragraph 19 above.

*Second Alternative Basis for Ownership*

28. TheBrain is the owner of the '736 Patent having received all right, title, and interest in the '736 Patent upon Natrificial's dissolution.

29. As stated above, in 1998, the sole inventor, Harlan Hugh, assigned all right, title, and interest in the '736 Patent to Natrificial. (Ex. E.)

30. On August 14, 2007, Natrificial was dissolved as a corporate entity, naming TheBrain as the sole surviving member (Ex. H). Pursuant to California corporate law (including, *e.g.,* Cal. Corp. Code § 17707.05, which replaced Cal. Corp. Code § 17353 in 2012), all right, title, and interest in the '736 Patent passed to TheBrain, the only member, as an operation of law upon Natrificial's dissolution.

*Third Alternative Basis for Ownership*

31. TheBrain is the owner of the '736 Patent by assignment, having received all right, title, and interest in the '736 Patent from Natrificial pursuant to Natrificial's wind up activities.

32. As stated above, in 1998, the sole inventor, Harlan Hugh, assigned all right, title, and interest in the '736 Patent to Natrificial. (Ex. E.)

33. On August 14, 2007, Natrificial was dissolved as a corporate entity, naming TheBrain as the sole surviving member (Ex. H). Pursuant to California corporate law (including, *e.g.,* Cal. Corp. Code § 17707.05, which replaced Cal. Corp. Code § 17353 in 2012), any

remaining assets shall be distributed among the members, including all right, title, and interest in the '736 Patent. Further, pursuant to Cal. Corp. Code § 1707.06, a limited liability company continues to exist for the purpose of winding up its affairs.

34. On April 8, 2019, Natrificial, through its sole member, TheBrain, assigned all right, title, and interest in the '736 Patent to TheBrain as a part of winding up affairs for Natrificial. (Ex. K.)

*Fourth Alternative Basis for Ownership*

35. TheBrain is the owner of the '736 Patent by assignment, having received all right, title, and interest in the '736 Patent from the inventor, Harlan Hugh.

36. As stated above, in 1998, the sole inventor, Harlan Hugh, assigned all right, title, and interest in the '736 Patent to Natrificial. (Ex. E.)

37. On August 14, 2007, Natrificial was dissolved as a corporate entity, naming TheBrain as the sole surviving member (Ex. H). On information and belief, Natrificial's rights in the '736 Patent then reverted to the inventor because Natrificial no longer existed.

38. On April 8, 2019, Harlan Hugh assigned all right, title, and interest in the '736 Patent to TheBrain. (Ex. K.)

***AnyLogic's Infringing Systems and Services***

39. AnyLogic makes, uses, sells, and/or offers to sell various software applications including, but not limited to, AnyLogic Personal Learning Edition, AnyLogic University Researcher Edition, and AnyLogic Professional Edition (the "Accused Products") that can be used on various computing devices, including without limitation personal computers.

40. The Accused Products allow users to perform various actions with respect to dynamic simulation tools, technologies and consulting services for business and government

7

applications, including but not limited to, integrating System Dynamics, Process-centric (Discrete Event), and Agent Based methods within one modeling language and one model development environment.

41. To provide these services to users, the Accused Products utilize numerous windows, or panels, that make up the user interface ("UI") of the Accused Products using source code AnyLogic has included in its products from The Eclipse Foundation. The UI for each of the products include indicia, such as tabs, representing the windows or panels and further includes at least one mechanism for splitting the UI in response to user interactions with said indicia. For example, the Accused Products allow users to drag tabs within the user interface and rearrange the layout of windows associated with the tabs in response to dragging the tabs. The Accused Products operated in this infringing manner throughout the applicable damages period, including until the '736 Patent expired on or about August 21, 2018.

42. AnyLogic infringed claims 1-8 of the '736 Patent. An exemplary description of how the Accused Products infringed the claims of the '736 Patent is attached as Exhibit B, which is incorporated by reference herein in its entirety.

43. AnyLogic marketed, sold, and offered to sell the Accused Products to, without limitation, individual users, universities, research organizations, government agencies, and various corporations ("Customers"), such as Intel Corporation, Lockheed Martin Corporation, Bristol-Myers Squibb Company, and Caterpillar, Inc.

44. On information and belief, the Accused Products were not staple articles of commerce and that the Accused Products were not suitable for substantial non-infringing use because the Accused Products were designed to provide infringing features and were provided to

Customers in a manner that was always capable of infringement and was intended for use that would infringe the '736 Patent, as shown in Exhibit B.

45. AnyLogic provided instructions and guidance to its Customers regarding using the Accused Products in a manner that infringes the '736 Patent at https://help.anylogic.com/index.jsp?topic=%2Fcom.anylogic.help%2Fhtml%2Fui%2FGE_Clone.html, https://www.anylogic.com/resources/support/ (the contents of these websites are hereby incorporated by reference as if fully set forth herein), and through a "Get Support" button available to Customers while they use the Accused Products.

### *AnyLogic's Knowledge of TheBrain and the '736 Patent*

46. On May 10, 2016, TheBrain, through its counsel, formally notified CEO Dr. Andrei Borshchev, the CEO of AnyLogic's parent entity The AnyLogic Company, via letter that products made, used, sold, or offered for sale by AnyLogic, including the Accused Products, infringed the '736 Patent. Upon information and belief, The AnyLogic Company received the May 10, 2016 letter on or about May 17, 2016.

47. After becoming aware of the '736 Patent at least as early as May 17, 2016, AnyLogic continued to make, use, sell, and offer to sell the Accused Products to Customers, thereby willfully infringing the '736 Patent through its expiration on or about August 21, 2018.

48. AnyLogic did not respond to the letter it received on or about May 17, 2016, including failing to provide any basis for non-infringement or invalidity, or any other justification for continuing its infringement of the '736 Patent.

49. As discussed in Paragraphs 22-23 above, on May 15, 2017, TheBrain filed suit against AnyLogic in the Central District of California, and the matter was later transferred to the Northern District of Illinois (the matter was dismissed without prejudice on grounds unrelated to

infringement or validity on March 4, 2019). After the May 15, 2017 complaint was filed, which included a detailed claim chart and description of TheBrain's allegations against AnyLogic, AnyLogic continued to make, use, sell, and offer to sell the Accused Products to Customers, thereby willfully infringing the '736 Patent.

50. On January 12, 2018, TheBrain served detailed infringement contentions on AnyLogic pursuant to the Patent Local Rules of N.D. Ill. After receiving those detailed infringement contentions, AnyLogic continued to make, use, sell, and offer to sell the Accused Products to Customers, thereby willfully infringing the '736 Patent.

51. On January 30, 2018, AnyLogic filed a petition for *inter partes* review based on two references, which were the only references identified in AnyLogic's invalidity contentions (served pursuant to the Patent Local Rules in N.D. Ill.). On May 24, 2018, the USPTO's Patent Trial and Appeal Board denied the request for *inter partes* review (IPR2018-00546, the proceedings of which are herein incorporated by reference as though set forth fully herein), finding that all five asserted invalidity grounds failed to anticipate or render obvious claims 1-8 of the '736 Patent. After learning its grounds for invalidity were meritless, AnyLogic continued to make, use, sell, and offer to sell the Accused Products to Customers, thereby willfully infringing the '736 Patent.

## COUNT 1

52. TheBrain repeats the allegations contained in the preceding paragraphs 1 through 51 as though fully set forth herein.

53. Upon information and belief, AnyLogic has in the past infringed the '736 Patent, directly and/or by inducement of infringement and/or by contributory infringement, by making,

using, selling and/or offering to sell, in this judicial district and elsewhere, the Accused Products, which embodied the patented invention of the '736 Patent.

54. Pursuant to 35 U.S.C. § 271(a), AnyLogic is liable for direct infringement of the '736 Patent by having made, used, offered to sell, or sold the Accused Products. AnyLogic's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Accused Products that embody the patented invention of the '736 Patent. AnyLogic has contracted to sell and has sold the Accused Products (in configurations generally similar to the allegations previously made herein) to, *inter alia*, Customers. AnyLogic continued to make, use, sell, offer to sell, and/or import Accused Products despite having knowledge of the infringement of the '736 Patent as discussed *supra*.

55. AnyLogic has been aware of the '736 Patent and the manner of infringing the '736 Patent since on or about May 17, 2016. Pursuant to 35 U.S.C. § 271(b), AnyLogic is liable for inducement of infringement by having knowingly caused (or intended to cause) the direct infringement of the '736 Patent by Customers and users of the Accused Products. Moreover, by having marketed and sold the Accused Products, AnyLogic is liable for inducement of infringement. By further having provided instructions on how to use the Accused Products, AnyLogic is liable for inducement of infringement. *See, e.g.*, Paragraphs 46-51 above.

56. AnyLogic has been aware of the '736 Patent and the manner of infringing the '736 Patent since on or about May 17, 2016. Pursuant to 35 U.S.C. § 271(c), AnyLogic is liable for contributory infringement of the '736 Patent by having sold or offered to sell the Accused Products, and the components thereof, that comprise a material component of the invention embodied in the '736 Patent, that are especially made or adapted for use in infringing the '736 Patent, and that are not suitable for any substantial non-infringing use having knowledge that the

'736 Patent was being directly infringed by Customers and users.  AnyLogic is therefore liable for contributory infringement of the '736 Patent.  *See, e.g.,* Paragraphs 46-51 above.

57. AnyLogic has been aware of the '736 Patent and the manner of infringing the '736 Patent since on or about May 17, 2016.  Pursuant to 35 U.S.C. § 271(f), AnyLogic is liable for infringement of the '736 Patent by having knowingly supplied Customers outside of the United States with components of the Accused Products, the components having no other substantial non-infringing use and not being staple articles or commodities of commerce.  Further, the combination of components supplied by AnyLogic to foreign entities would have infringed the '736 Patent if such combination occurred within the United States.  *See, e.g.,* Paragraphs 46-51 above.

58. At least since learning of the '736 Patent and the basis for infringement on or about May 17, 2016, AnyLogic's infringement of the '736 Patent was willful, deliberate, and intentional by continuing its acts of infringement with knowledge of the '736 Patent and thus having acted in reckless disregard of TheBrain's patent rights. *See, e.g.,* Paragraphs 46-51 above.

59. On information and belief, AnyLogic took no steps to avoid infringement after learning of its infringement on or about May 17, 2016, thereby willfully and knowingly infringing, directly and indirectly, the '736 Patent.

60. After learning that its only identified basis for invalidity was meritless when the PTO denied AnyLogic's petition for *inter partes* review on or about May 24, 2018, AnyLogic continued to make, use, sell, and offer to sell the Accused Products to Customers, thereby willfully infringing the '736 Patent.

61. Upon information and belief, AnyLogic has not relied on a formal opinion of counsel to continue its infringement of the '736 Patent since learning of its infringement on or

about May 17, 2016, thereby willfully and knowingly infringing, directly and indirectly, the '736 Patent.

62. Therefore, in view of the actions set forth in Paragraphs 46-51 and 58-61, AnyLogic's infringement is willful, deliberate, and intentional by continuing its acts of infringement with knowledge of the '736 Patent and thus acting in reckless disregard of TheBrain's patent rights for at least the period from on or about May 17, 2016 to August 21, 2018, when the '736 Patent expired.

63. As a result of AnyLogic's acts of infringement of the '736 Patent, TheBrain has suffered injury to its business and property in an amount to be determined as damages.

## JURY DEMAND

64. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, TheBrain demands trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, TheBrain prays for judgment and relief as follows:

A. A declaration that AnyLogic has infringed, has induced, and has contributed to the infringement of the '736 Patent;

B. C. An award of damages adequate to compensate TheBrain for the infringement of the '736 Patent by AnyLogic and its Customers and users;

D. A declaration that AnyLogic's continued infringement of the '736 Patent was willful, justifying a trebling of the award of damages under 35 U.S.C. § 284, or such other enhancement of the award of damages that the Court deems appropriate;

E. An award of pre-judgment and post-judgment interest on the damages caused by reason of AnyLogic's infringement of the '736 Patent;

F. A declaration that this an exceptional case and that TheBrain be granted its reasonable attorneys' fees and expenses in accordance with 35 U.S.C. § 285;

G. An award of costs and expenses to TheBrain; and

H. A grant to TheBrain of such other and further relief as the Court may deem just and proper.

Dated: April 18, 2019

By:   */s/ Seth H. Ostrow*

Seth H. Ostrow (MA Bar No. 562546)
sho@msf-law.com
Sarah Pfeiffer (*pro hac vice* to be filed)
sap@msf-law.com
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Facsimile: (212) 655-3536

*Attorneys for Plaintiff*
*TheBrain Technologies, LP*